**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| N.B., by and through his legal guardian, advocate, and next friend, L.K., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 12-00012-KD-C |
| | ) | |
| DEMOPOLIS CITY BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This action is before the Court on the Defendant's Motion for Summary Judgment (Doc. 19) pursuant to Rule 56 of the Federal Rules of Civil Procedure and Brief in support (Doc. 19-1), along with the Plaintiff's Response in opposition (Doc. 26) and the Defendant's Reply to said response (Doc. 27).   Upon consideration, the Court finds that the Defendant's motion is due to be **GRANTED**.

**I.     Background**

While at school on December 13, 2010, Plaintiff N.B. ("N.B."), a student enrolled in the Demopolis City School District ("DCSD"), physically assaulted one of his teachers and his school's principal.   (Doc. 20-2 at 32, 35-36).   N.B. was subsequently charged with a violation of the DCSD's Student Code of Conduct and suspended.   The case was turned over to juvenile authorities.

On December 15, 2010, N.B.'s legal guardian, L.K., filed a complaint requesting a due process hearing pursuant to 20 U.S.C. § 1415, alleging that Defendant Demopolis City Board of Education ("the Board") had violated N.B.'s rights under the Individuals

with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").   (Doc. 20-7 at 102).

A hearing was conducted over a period of five non-consecutive days from June 20, 2011,

through September 28, 2011.   (Doc. 20-8 at 9).   On December 14, 2011, the presiding

hearing officer issued his decision, finding that the Board provided N.B. with a free

appropriate public education (FAPE) and that the Board complied with the

requirements of IDEA in the development of N.B.'s individualized education program

(IEP).

On January 10, 2012, N.B., by and through L.K.,[1] filed the present Complaint

pursuant to § 1415(g), appealing the hearing officer's decision.   (Doc. 1).   N.B.

requests that the Court reverse the hearing officer's decision and find in N.B.'s favor on

all issues.   N.B. seeks declaratory and injunctive relief, as well as all relief sought at the

hearing, "compensatory education/and or []education services," attorneys' fees, and

costs.   (Id. at 7-8).

In arguing that he is entitled to the relief sought, N.B. alleges that the Board:

1) "has failed to appropriately evaluate NB and find NB eligible for services in an

appropriate disability category with appropriate individual education plans and

services in those areas of disability" (Id. at 3, ¶ 10); 2) "has failed to provide, or

otherwise assure that NB has been provided with an appropriate educational program

that would allow him the opportunity to gain [social] skills" (Id., ¶ 11); 3) "has failed to

develop an IEP for NB that addresses his disabilities, and unique needs and

characteristics" (Id. at 5, ¶ 18); 4) "has failed to comprehensively evaluate NB as

required [and] has further denied NB a free, appropriate public education, as NB's IEPs

---

[1]  Hereinafter, the Court will use "N.B." to refer to both "N.B." singularly and "N.B., by and through L.K."

failed to meet IDEA's basic requirements" (Id., ¶ 21); and 5) "failed to provide related services, to-wit, a board certified behavior analyst and/or related mental health services to assist in the development and implementation of a behavior intervention plan" (Id., ¶ 22).   Such failures "deprived [N.B.] of comprehensive evaluations, a free appropriate public education in the least restrictive environment, related serves [sic] and assistive technology, in violation of [IDEA]."   (Id. at 6, ¶ 29).

The Board filed the present motion for summary judgment on September 10, 2012 (Doc. 19), and it is now ripe for consideration.   The Court has jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(3)(A).

## II.      Standard of Review

"The IDEA . . . represents an ambitious federal effort to promote the education of handicapped children . . . The IDEA achieves its goals by guaranteeing students with disabilities a Free and Appropriate Public Education ("FAPE") . . . The services and placement needed by each child with a disability to receive a FAPE must be based on the child's unique needs and not on the child's disability . . . To provide a child with a FAPE, the School Board formulates an IEP [("individualized education program")] during a meeting between the student's parents and school officials."   M.M. ex rel. C.M. v. Sch. Bd. of Miami-Dade County, Fla., 437 F.3d 1085, 1094-95 (11th Cir. 2006) (internal quotations omitted).   "Should parents elect to challenge an IEP, they are entitled to a due process hearing before an ALJ [("administrative law judge")]."   Id. at 1096 (citing 20 U.S.C. §§ 1412(a)(6)(A) & 1415(a)-(o); 34 C.F.R. § 300.403(b)).   For a party who does not prevail with the ALJ,

> [t]he IDEA authorizes an "aggrieved" party to bring an action in federal court challenging the ALJ 's final decision. 20 U.S.C. § 1415(i)(2)(A). Although the federal action is an independent civil action and not merely a review of a state administrative decision, the Supreme Court has determined that federal

3

courts must still give "due weight" to the ALJ's determinations. See [Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. ]Rowley, 458 U.S. [176, ]206, 102 S. Ct. [3034, ]3051[ (1982)]; Loren F.[ v. Atlanta Independent Sch. Sys.], 349 F.3d [1309, ]1314[ (11th Cir. 2003)]. "To that end, administrative factfindings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." Loren F., 349 F.3d at 1314 n.5 (internal quotation marks and citations omitted).

The district court answers the same two-part inquiry as [the ALJ]: namely, whether the School Board followed the IDEA's procedural requirement and whether the proposed IEP was sufficient to provide the child with a FAPE. Rowley, 458 U.S. at 206-07, 102 S.Ct. at 3051, 73 L.Ed.2d 690; Loren F., 349 F.3d at 1312. "A 'yes' answer to both questions ends judicial review." Loren F. 349 F.3d at 1312; see Rowley, 458 U.S. at 207, 102 S. Ct. at 3051 ("If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.").

However, should the district court determine either that the School Board failed to follow the IDEA's procedural requirements or that the IEP was not reasonably calculated to enable the student to receive education benefits, it "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1439(a)(1); see also 20 U.S.C. § 1412(a)(10)(C)(ii) ("[A] court or a hearing officer may require [the School Board] to reimburse the parents for the cost of that enrollment."); 34 C.F.R. § 300.403(c) ("[A] court or a hearing officer may require the agency to reimburse the parents for the cost of that [private school] enrollment if ... the agency had not made FAPE available to the child in a timely manner prior to that enrollment and ... the private placement is appropriate."). The reviewing court has broad discretion in determining what is appropriate based on the circumstances of each case. See Burlington, 471 U.S. at 369, 105 S. Ct. at 2002.

Id. at 1097-98 (footnotes omitted).

As the Middle District of Alabama has noted,

[t]he standard by which a district court should review an administrative decision under the IDEA is a murky one. On the one hand, the district court is to conduct a de novo review of the [administrative law judge's] findings. Sch. Bd. of Collier Cnty., Fla. v. K. C., 285 F.3d 977, 981 (11th Cir. 2002). The Eleventh Circuit has explained that "the extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them." Walker Cnty. Sch. Dist. v. Bennett, 203 F.3d 1293, 1297–98 (11th Cir.2000). However, an administrative decision "is entitled to due weight and the court must be careful not to substitute its judgment" for that of the hearing officer. Id.

4

K.I. ex rel. Jennie I. v. Montgomery Pub. Sch., 805 F. Supp. 2d 1283, 1291 (M.D. Ala. 2011).

The Eleventh Circuit has further explained that while "[c]ourts owe some judicial deference to local administrative agency judgments, see Deal v. Hamilton County Dept. of Educ., 259 F. Supp. 2d 687, 691–92 (E.D. Tenn. 2003) (When reviewing IEPs, court keeps in mind that state and local administrative agencies are deemed to have expertise in education policy and practice), []that's typically limited to matters calling upon educational expertise. [Kings Local School Dist., Bd. of Educ. v. ]Zelazny, 325 F.3d [724, ]728 [(6th Cir. 2003) ](The amount of weight due to administrative findings under the IDEA depends on whether the finding is based on educational expertise) (citing McLaughlin v. Holt Pub. Sch. Bd. of Educ., 320 F.3d 663, 669 (6th Cir. 2003)). "   Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1314 n.5 (11th Cir. 2003).

With regard to the disposition of a motion for summary judgment on IDEA claims,

> Eleventh Circuit precedent holds that "the usual [Rule] 56 summary judgment principles do not apply in an IDEA case." Loren F. v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313 (11th Cir. 2003). Instead, a district court's review of an IDEA appeal is " 'better described as a judgment on the record.' " Id. at 1313 (citing Beth B. v. Van Clay, 282 F.3d 493, 496 n.2 (7th Cir. 2002)). Accordingly, " 'summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute.' " Id. (citing Beth B., 282 F.3d at 496 n.2).

> When a district court reviews findings and decisions made during IDEA administrative hearings, the court receives the administrative record, and renders a decision based on a preponderance of the evidence. See Walker Cnty. Sch. Dist. v. Bennett, 203 F.3d 1293, 1297-98 (11th Cir. 2000).

Ms. H. v. Montgomery Cnty. Bd. of Educ., No. 2:10CV247-WHA-SRW, 2011 WL 666033, at *1 (M.D. Ala. Feb. 14, 2011) (Albritton, J.).

"The burden of proof in an administrative hearing challenging an IEP is properly

placed upon the party seeking relief."   Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005).   See also Ala. Admin. Code r. 290-8-9-.08(9)(c) ("The party filing the hearing request has the burden of proof with respect to any claimed violation or request for relief.").   The Court will apply the same standard to the present action.   Therefore, N.B. bears the burden of proving that he is entitled to relief from the hearing officer's decision by a preponderance of the evidence.

### III.   Facts

The administrative record establishes the following facts:

N.B. enrolled in the Demopolis County School District in August 2010.   N.B. was in seventh grade at the time of his enrollment in Demopolis.   In the school year of 2009-2010, N.B. had attended Rudd Middle School in the school district of Jefferson County, Alabama. N.B. had qualified for special education services while attending Rudd.   His area of disability was "Other Health Impairment."   The record indicates that N.B. had been diagnosed with Oppositional Defiance Disorder (ODD), Mood Disorder, Attention Deficit Hyperactivity Disorder (ADHD) and Post-traumatic Stress Disorder (PTSD).

The Jefferson County School District had conducted a full IDEA evaluation of N.B. prior to N.B.'s enrollment at Demopolis.   The evaluation report was made available to Demopolis at the time of N.B.'s enrollment and contained results from a number of different intelligence and behavioral tests.   Demopolis was also provided N.B.'s most recent individualized education program (IEP) from the Jefferson County School District at the time of N.B.'s August 2010 enrollment.   This annual IEP had been developed by the Jefferson County School District on November 12, 2009, and was to be implemented until November 12, 2010 (hereinafter, "the Jefferson County IEP").

6

The Jefferson County IEP did not provide for specialized or differentiated academic instruction, as N.B. was already successful academically.   However, it did address N.B.'s weaknesses in the area of behavior.   Specifically, N.B. was prone to outburst when he was asked to comply with directions and would become upset with consequences given for not following or listening to directions.

Jennifer Lay is a special education teacher with Demopolis County.   She has a bachelor's degree in education, a master's degree in emotional behavior disorders, and an additional master's degree in Learning Disabilities.   On August 5, 2010, the day that N.B. enrolled as a student at Demopolis Middle School, Lay first consulted with N.B.'s guardians regarding his special education needs and was provided a copy of the Jefferson County IEP.   A follow-up consultation with the guardians was held a few days later.   Lay and the guardians reviewed N.B.'s 2008 eligibility report and the Jefferson County IEP.

Based upon the information contained in the records from Jefferson County, Lay concluded that the Jefferson County IEP had been successful during its implementation at Rudd Middle School.   The guardians did not inform Lay of any behavioral issues that were not already documented by the 2008 evaluation and the Jefferson County IEP.   Lay states that the guardians were in agreement for Demopolis to accept and implement the Jefferson County IEP without change.   The decision to accept the Jefferson County IEP was consistent with Lay's professional expertise, the data documented on N.B.'s 2008 evaluation and IEP.

Initially, only Lay implemented the IEP.   However, after N.B. misbehaved in mid-September, Lay distributed the Jefferson County IEP to all of N.B.'s teachers at Demopolis Middle School.   Lay believed the behavioral assessment (FBA) conducted

by Rudd Middle School was appropriate and that it contained sufficient baseline data for the IEP team to know how often N.B.'s behavior rose to the level of an office referral.   As such, there was not a need for Demopolis Middle School to conduct another FBA in either August or November 2010.

Lay also believed that the annual goal in the Jefferson County IEP was measurable.   Specifically, the measurable aspect of the annual goal is for N.B. to have no office referrals, due to the behaviors designated by the IEP, by the end of the IEP period.   She believed that the Jefferson County IEP was appropriate and reasonably calculated to provide an educational benefit to N.B.   She noted that the IEP provided various behavior techniques and interventions such as de-escalation, redirection, counseling, etc.   Pursuant to her educational background and ongoing training, Lay believed that these services were appropriate to address N.B.'s educational needs secondary to his disability.   Lay had also successfully used such techniques with other students in the past that exhibited behavior similar to N.B.'s.

Lay identified some of the components of the Jefferson County plan that supported her opinion that N.B. received a free appropriate public education while attending Demopolis Middle School:

- The provision of the IEP that allowed N.B. to come to her during the school day to talk about issues one-on-one was an appropriate behavioral service for N.B.'s IEP.   Lay would   individually counsel and provide instruction to N.B. as to how to successfully address the behavioral issues confronting him.   This IEP service de-escalated N.B's behavioral issues, helped N.B. maintain his composure and demeanor in the classroom, and allowed N.B. to maintain his placement in the general education classroom.   Lay found this technique   to

be an effective behavior management tool and it was consistent with her training and education.

- The portion of N.B.'s IEP that allowed N.B. to self-remove himself from class for a few minutes if he felt that his behavior was escalating was reasonably calculated to address N.B.'s behaviors. This behavioral technique was also consistent with Lay's education and training.   Lay observed that N.B. was able to monitor his behavior and to utilize this technique without being prompted.

- The Jefferson County IEP further provided N.B. a class period each day with Lay, who utilized the period to address any behavioral issues N.B. may be having and provide him with counseling and social skills training.

- The Jefferson County IEP provided the technique of "planned ignorance," whereby N.B.'s teachers were instructed to ignore minor incidences of misbehavior when correcting N.B. would likely lead to an escalation of his behaviors.

- N.B.'s classroom teachers were provided with an envelope.  If the teachers observed that N.B.'s behavior was escalating, they were instructed to ask N.B. to take the envelope to the office as a means of providing N.B. with a cool-down period.

In Lay's opinion, N.B.'s diagnosis of ODD in and of itself does not require a more elaborate IEP than that provided by Demopolis, as N.B.'s behaviors were mild and far less frequent in comparison to other students with a diagnosis of ODD.   Lay also believes that the Demopolis had sufficient data in both August and November 2010 to determine the appropriateness of N.B.'s IEP.

When the IEP was set to expire in November 2010, Lay sent two meeting notices

9

for a November 11, 2010 IEP meeting to N.B.'s guardians.   These notices were sent home with N.B.  (Doc. 20-3 at 3, pp. 313-15).   Lay did not follow up with N.B.'s guardians about the proposed meeting. (Id.).   The guardians did not attend, but a copy of the IEP developed at the meeting was sent to them following the meeting.

On November 11, 2010, N.B.'s IEP team met.   The November 2010 IEP team included a local education agency representative, a general education teacher, a special education teacher, and an individual capable of interpreting the implications of evaluation results.

The November 2010 IEP team reviewed information as to N.B.'s office referrals and behavior at Demopolis Middle School occurring from August 2010 to November 11, 2010.     N.B. had received three office referrals during this time. The office referrals had been for tardiness, using profanity, and being disrespectful.   The fact that N.B. had received office referrals during the IEP period meant that N.B. had not mastered the annual goal of his IEP.   However, the IEP team determined that N.B.'s three office referrals did not necessitate the need for increased IEP services for N.B. in the upcoming IEP.   Lay believed that N.B.'s transition to a new school and home could have been a reason for the office referrals from August to November 2010.   The IEP team also found the three office referrals to be sporadic incidents that did not indicate a pattern of misbehavior.

The IEP team decided to extend the Jefferson County IEP until May 26, 2011, as N.B. had not mastered the annual goal of the IEP. The IEP team decided not to increase the amount of services provided in the IEP.   Based upon her expertise, the input from other IEP team members, and her knowledge of N.B. from working with him on a daily basis since August 2010, Lay had a reasonable expectation that N.B.

10

would be able to master the annual goal of the November 2010 IEP with the supports currently provided by the IEP.   Lay also believed that there was not a need in November 2010 to conduct a new FBA or to revise the BIP contained in the Jefferson County IEP.

The decision of the IEP team to continue the Jefferson County IEP is also supported by the testimony of Martha McKnight.   McKnight is the special education coordinator for the Demopolis County School District.   She was proffered at the due process hearing as an expert in the area of special education.   At the time of the due process hearing, she had worked in the field of education for 37 years, was certified in elementary education, special education, and psychometry, had administered numerous achievement and IQ tests, and was engaged in a university doctoral program.   McKnight had never met N.B.

McKnight's opinion was that the decision to accept the Jefferson County IEP was appropriate.   N.B. had had no office referrals in the 2008-2009 school year, he was not enrolled in a behavior intervention classroom, and the behaviors N.B. began exhibiting at Demopolis Middle School were consistent with those described in the Jefferson County IEP.   McKnight also believed it would not have been appropriate for Demopolis to do new evaluations or change N.B.'s current IEP at the time of his August 2010 enrollment, as Demopolis did not know N.B. well enough at that time to undertake such tasks.

In McKnight's opinion, the evaluation did not indicate the need for extensive special education and related services.   Specifically, McKnight noted the following:

- N.B.'s achievement test scores in all academic areas indicated that he was academically achieving above an average student and was proficient at grade

level standards.

- N.B. scored non-significant on four of the six behavioral rating scales conducted by classroom teachers.

- School data reviewed in determining the impact of N.B.'s behavior upon education performance documented that N.B. would make noises, mumble, or have an outburst when he was asked to comply with directions.   N.B. would become upset with consequences given for not following or listening to directions.   However, classroom observation did not document any instances of N.B. attacking or assaulting his teacher when he became upset.

- N.B.'s most recent IQ tests were statistically consistent, were within the standard range of deviation, and established that N.B. was academically achieving commensurate with his IQ level.   McKnight did not feel that N.B. had academic weaknesses, only behavioral ones.

- N.B. was obtaining passing marks in all of his academic classes and was advancing grade level to grade level, indicating that N.B. was meeting grade level course content standards.

- A structured interview with N.B.'s parent established that N.B. had moderate behavior issues that did not adversely affect his performance in school.   The parent reported that N.B. needed to accept constructive criticism and learn appropriate social skills, but she did not report any prior physical aggression or violence by N.B.

McKnight also testified that the November 2010 decision to the current IEP was appropriate.   She noted that the extension of N.B.'s annual goal as delineated in the Jefferson County IEP was appropriate because environmental stressors such as the

adjustment to his new school and home were likely temporarily delaying his ability to reach his goals.   She also explained that it was not necessary to amend or revise the Jefferson County IEP in November 2010 because the flexibility built into the IEP and BIP allowed Demopolis to provide increasing supports if N.B.'s behavior escalated. Although N.B. had received three office referrals for tardiness, disrespectfulness, and profanity while enrolled in Demopolis, McKnight was of the opinion that such behaviors were expected based on the Jefferson County IEP.   Moreover she opined that the BIP and that the Jefferson County IEP contained appropriate services and tools to address such behaviors, as they were reasonably designed to help N.B. reason and model appropriate behavior.

Three of N.B.'s teachers also testified.   Coty Goehagan is a seventh grade English teacher at Demopolis Middle School.   She has a Bachelor of Arts in English Language Arts and is working on obtaining a Master's degree.   At the time of the hearing, she has been a teacher for approximately four years.   Goehagan taught seventh grade English to N.B. during the 2010-2011 school year.   Lay was a collaborative teacher in the class.   N.B. earned a 79 as a semester average in her, which was average. Goehagan testified that N.B. seldom exhibited inappropriate behavior in her classroom. She was able to utilize verbal queues, de-escalation, cool-down time, and communication to address any inappropriate behavior by N.B.   These techniques were provided by N.B.'s IEP and BIP.   Goehagan took N.B. out of the classroom in order to cool down approximately three times during the first semester.   In Goehagan's opinion, the IEP services provided to N.B. were appropriate and no other services were needed.

Blythe Smith is a seventh grade science teacher at Demopolis Middle School.

13

She has a bachelor's degree and is working on obtaining a master's degree.   At the time of the hearing she had been a teacher for approximately seven years.   Smith taught 7th grade Science to N.B. during the 2010-2011 school year.   N.B.'s semester average in her class was a 70, which is a C.   N.B. did not exhibit inappropriate behavior in her classroom.   She does not recall him being disrespectful, having verbal outbursts, or presenting a negative attitude.   Smith never heard N.B. use profanity or saw him make an obscene gesture.   In Smith's opinion, the IEP services provided for N.B. were appropriate, and she did not believe that N.B. needed more or different services. Smith worked with Lay and routinely implements IEPs of special education students.

Donmonique Gracie is a seventh grade English teacher at Demopolis Middle School.   She has a Bachelor of Arts degree and a master's degree in English Language Arts.   At the time of the hearing, she had been a teacher for approximately four years. Gracie taught Journalism to N.B. during the 2010-2011 school year.   Lay was a collaborative teacher in the class.   N.B.'s semester average in Journalism was 76, which is a C.   N.B. exhibited one episode of inappropriate behavior in Gracie's class; exhibiting a verbal outburst and using profanity when Gracie suggested that N.B. should allow another student to portray a character that N.B. wanted to continue to portray.   Lay was successful in calming N.B. down by whispering something in his ear.   N.B. had also been verbally disrespectful to Gracie and had used profanity toward Gracie and another faculty member. In Gracie's opinion, the IEP services provided to N.B. were appropriate and she did not believe that N.B. needed more or different services.

L.K. is the guardian of N.B.   L.K. has a Delegation of Parental Rights for N.B. pursuant to Alabama state law and has shared custody of him.   L.K. has been trained

and previously certified as a foster parent. L.K. has taken additional training in regards to being a therapeutic foster parent.

L.K. received the Jefferson County IEP and the Jefferson County school district eligibility report from N.B.'s biological mother. L.K. gave the documents to the secretary at Demopolis Middle School. L.K. states that she never told anyone that she wanted to adopt or continue using the Jefferson County IEP. She also never received notice that there was an IEP meeting scheduled for N.B. on November 11, 2010. Had she received notice, she would have attended. L.K. also states that she did not receive a copy of N.B.'s IEP from Demopolis.

L.K. states that during N.B.'s attendance at Demopolis Middle School, August – December 2010, she was called at least eight times to either pick N.B. up or to come to the school to attempt to calm him down. She was asked by school personnel to take him home four times. Lay and L.K. communicated about N.B.'s behavior on a weekly basis. L.K. discussed with school personnel what was effective in handling N.B.'s behavior at home and what was likely to escalate his behaviors. L.K. believed that N.B. responded positively to "talk therapy".

After N.B. was suspended, L.K. did not allow N.B. to return to school. Moreover, L.K. refused to attend the IEP meetings that were scheduled in January 2011 to address N.B.'s behavior and his further attendance at Demopolis Middle School.

## IV.   Analysis

In support of its motion for summary judgment, the Board argues that the hearing officer's decision is supported by the record evidence because: 1) the Board's acceptance of the Jefferson County reevaluation in August 2010 was appropriate, as the

Jefferson County evaluation was legally sufficient and Board was not required to reevaluate N.B. at the time of his enrollment in its school district; 2) the Board's implementation of the Jefferson County IEP in August 2010 was appropriate, as it both procedurally and substantively met the requirements of IDEA; 3) the Board's November 11, 2010 decision to continue the annual goal in N.B.'s IEP complied with IDEA; 4) the assault committed on December 13, 2010, by N.B. is not applicable to the appropriateness of the IEP prior to that date; and 5) N.B. was not subjected to any disciplinary change of placement prior to the filing of the due process complaint on December 15, 2011.

In his Response, N.B. argues the following:

1. The Jefferson County IEP provided only one measurable annual goal: "N.B. will accept personal responsibility for his actions without talking disrespectfully to his teacher, and keeping negative comments to himself."   N.B. argues that this goal is not in fact measurable and does not address N.B.'s unique needs and characteristics.   (Doc. 26-1 at 16-17, 20).

2. The Board's decision to maintain the Jefferson County IEP was based on information contained in an eligibility report that was at least two-and-a-half years old at the time N.B. enrolled in the District.   (Id. at 17).

3. The Board was not entitled to adopt the Jefferson County IEP in August 2010 rather than develop its own, pursuant to 20 U.S.C. § 1414(d)(2)(C)(i)(I), because:

   a. N.B. did not transfer to the DCSD from the Jefferson County School District within the same academic year, (Id. at 17-18),

   b. the Board did not consult with N.B.'s parent or guardians before doing so (Id. at 18-20), and

    c.  the Board did not take steps to obtain N.B.'s records from the Jefferson County School District, pursuant to § 1414(d)(2)(C)(ii)(I).   (Doc. 26-1 at 18-20).

4.  N.B.'s guardians were provided inadequate notice of the Board's November 2010 IEP meeting, at which the decision was made to continue implementing the Jefferson County IEP.   (Id. at 19-20).

In its Reply, in addition to addressing the merits of N.B.'s arguments, the Board claims that N.B. is barred from raising those arguments because they were not raised in the original due process complaint giving rise to the underlying administrative hearing. (Doc. 27 at 2-3).   The Court will address this argument first.

### a.   Failure to raise issues in due process complaint

The Board does not cite any case law to support its proposition that N.B.'s failure to set forth the above-listed arguments in his original due process complaint bars their assertion in these proceedings.   The Board does cite 20 U.S.C. § 1415(f)(3)(B) (along with its related regulation provision, 34 C.F.R. § 300.511(d)), which states: "The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7), unless the other party agrees otherwise."

"The philosophy of the IDEA is that plaintiffs are required to utilize the elaborate administrative scheme established by the IDEA before resorting to the courts to challenge the actions of the local school authorities.   N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378 (11th Cir. 1996) (quotation omitted) (emphasis added).   Thus, exhaustion is a prerequisite to the civil action contemplated by § 1415, and a parent's failure to exhaust administrative remedies by requesting and participating in a

17

due-process hearing will result in dismissal of the civil action.   Id.; see also Ass'n for Retarded Citizens of Ala. v. Teague, 830 F.2d 158, 160 (11th Cir. 1987)."   Sch. Bd. of Lee County, Fla. v. M.M. ex rel. M.M., 348 F. App'x 504, 511-12 (11th Cir. 2009).[2]

> [T]he IDEA requires parents invoking the due process hearing mechanism to provide notice to the educational agency including, without limitation, "a description of the nature of the problem of the child relating to such proposed initiation or change, **including facts relating to such problem.**" 20 U.S.C. § 1415(b)(7)(A)(ii) (emphasis added). But the statute does not specify that all facts relating to the parents' dissatisfaction must be spelled out in the notice, much less that every legal theory must be set forth in painstaking detail at that time to avoid waiver.

Escambia Cnty. Bd. of Educ. v. Benton, 406 F. Supp. 2d 1248, 1259-60 (S.D. Ala. 2005) (Steele, J.).

In Doe v. Alabama State Department of Education, 915 F.2d 651 (11th Cir. 1990), the Eleventh Circuit analyzed the issue of exhaustion of administrative remedies under the Education of the Handicapped Act (EHA), the predecessor of IDEA, and rejected an argument similar to that presented by the Board where "[e]vidence regarding []alleged procedural violations of the EHA was presented at the due process hearing."   915 F.2d at 660.

In this case, N.B.'s *pro se* due process complaint alleged as follows:

> Violations of special education requirements including failure to implement or follow the IEP [("individual education plan")] or BIP [("behavior intervention plan")], a disciplinary change in placement as the result of a series of removals totaling 16 days this school year, no manifestation determination and failure to provide a copy of IDEA's procedural safeguards notice, failure to complete an FBA or revision of the BIP to address the behaviors.   [N.B.] was physically restrained by a teacher on December 13, 2010 and he was suspended for assault.   N.[B.]'s behavior escalated to this point as a result of the school personnel failing to follow N[.B.]'s BIP.   N[.B.] did not receive special education services while suspended.   In addition, the

---

[2]  A thorough review of Eleventh Circuit case law regarding exhaustion of administrative remedies for IDEA claims can be found in Atlanta Independent School System v. S.F ex rel. M.F., No. 1:09-CV-2166-RWS, 2011 WL 721488, at *4-8 (N.D. Ga. Feb. 22, 2011).

SAP proctor implemented N[.B.]'s IEP and BIP by giving N[.B.] a copy of his IEP and BIP and telling him he needed to read them.

N[.B.] has received two in-school suspensions (SAP) for five days each, has been sent home due to behavior on three occasions, and was sent to the juvenile detention center on 12/13/10.   After meeting with the principal on 12/14/10, N[.B.] was supposed to attend school the remainder of the week, complete his exams, and be suspended again after Christmas break.   N[.B.] came home with his disciplinary report after school on 12/14/10, after we had met with the principal, and the report indicated that N[.B.] was placed on at home suspension, was to report to school Friday to take all his exams, and that we were to attend an IEP meeting regarding change of placement "after school" on 12/15/10 [*sic*] We did not receive prior written notice of the IEP meeting that is to occur this afternoon.

(Doc. 20-7 at 102).

However, the arguments presented by N.B. in his Response are largely taken word-for word from the section of the hearing officer's report entitled "Petitioner's Arguments"  (Doc. 20-8 at 41-43), with some analysis and disagreement with the hearing officer's determinations added.   Applying the reasoning of <u>Doe</u>, the Court finds that N.B. may properly present his arguments in this action because they were first raised at the underlying due process hearing, regardless of whether each and every one of them was expressly stated in his due process complaint.

N.B.'s arguments 1 and 2, as set out above, appear to address the substantive sufficiency of the Jefferson County IEP, while arguments 3 and 4 appear to address the procedural requirements of IDEA.    The Court will address the procedural issues first.

### b.   Compliance with IDEA's procedural requirements

### 1.   Continuation of the Jefferson County IEP in August 2010

"At the beginning of each school year, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program [("IEP")] . . . "  20 U.S.C. § 1414(d)(2)(A).   <u>See also</u> <u>J.E. v. Boyertown Area</u>

19

Sch. Dist., 834 F. Supp. 2d 240, 254 (E.D. Pa. 2011), aff'd sub nom. J.E. ex rel. J.E. v. Boyertown Area Sch. Dist., 452 F. App'x 172 (3d Cir. 2011) ("The IDEIA requires that an IEP be in place as of the first day of school.") (citing § 1414(d)(2)(A) and 34 C.F.R. § 300.323(a)).   N.B. argues that the Board did not have a valid IEP in effect for N.B. from August 2010 until November 2010, when N.B.'s IEP team decided to continue using the Jefferson County IEP.   N.B. claims that the Board erroneously relied on § 1414(d)(2)(C)(i)(I), which states:

> In the case of a child with a disability who transfers school districts within the same academic year, who enrolls in a new school, and who had an IEP that was in effect in the same State, the local educational agency shall provide such child with a free appropriate public education, including services comparable to those described in the previously held IEP, in consultation with the parents until such time as the local educational agency adopts the previously held IEP or develops, adopts, and implements a new IEP that is consistent with Federal and State law.

As to this issue, the hearing officer determined: "Because N.B. transferred to Demopolis Middle School from another Alabama public school and because he transferred after the school year had started, the Demopolis City School District was not required to have an IEP meeting in August of 2010 in order to implement the Jefferson County IEP."   (Doc. 20-8 at 46).[3]

N.B. claims that he began the 2010-2011 academic year in the DCSD.   Because he did not "transfer[] school districts within the same academic year," he argues, the DCSD was required to have an IEP formally implemented at the beginning of the school year.   N.B. argues that the hearing officer's findings on this issue are erroneous because no evidence was presented showing that N.B. was enrolled in the Jefferson County School District during the 2010-2011 academic year and because L.K., N.B.'s

---

[3] The Court notes that L.K. testified that N.B. enrolled on the third day of school, thus the finding that N.B. transferred after the school year started is supported by the evidence.

guardian, testified that N.B. came to live with her in July 2010, (Doc. 20-3 at 47, p. 489), the month prior to the opening of school in the School District.

In its Reply, the Board appears to agree that § 1414(d)(2)(C)(i)(I) does not apply in this case (apparently contradicting both the hearing officer's findings, *supra*, and its own argument at the due process hearing, (see Doc. 20-3 at 16)), but argues that the requirement of § 1414(d)(2)(A) that an IEP be in place at the beginning of the school year was still satisfied because the Jefferson County IEP was immediately implemented by the District at the beginning of the 2010-2011 academic year in consultation with L.K. and was still current, as it had been developed within the year (in November 2009). The Board also points out correctly that there is no specific requirement that N.B. be reevaluated when he changes school districts while an IEP is still current. Accordingly, the Court finds no procedural violation in the DCSD's decision to continue with the Jefferson County IEP.

N.B. also argues that the acceptance of the Jefferson County IEP in August 2010 was not carried out "in consultation with [his] parents" as § 1414(d)(2)(C)(i)(I) requires. The hearing officer found that such consultation "occurred in this case."   (Doc. 20-8 at 46).   N.B. claims that no evidence of such consultation was presented and that "[t]he hearing officer has elevated conversations between L.K. and N.B.'s teacher to the level of an IEP consultation."   (Doc. 26-1 at 18).   However, a review of the testimony of Ms. Lay indicates that N.B.'s parents were sufficiently consulted.[4]   Accordingly, the Court finds sufficient evidence in the record to support and concur with the hearing officer's determination that N.B.'s guardians were consulted as to the continuation of the

---

[4] L.K. testified that, when she provided the Jefferson County IEP to the School District, she did not tell them that she wanted to adopt or continue using that IEP.   (Doc. 20-3 at 50, p. 501). The Court finds this assertion is not determinative of whether appropriate "consultation" took place.

Jefferson County IEP in August 2010.

Finally, N.B. argues that the Board, in continuing its use of the Jefferson County IEP in August 2010, did not comply with § 1414(d)(2)(C)(ii)(I), which states: "To facilitate the transition for a child described in [§ 1414(d)(2)(C)(i),] the new school in which the child enrolls shall take reasonable steps to promptly obtain the child's records, including the IEP and supporting documents and any other records relating to the provision of special education or related services to the child, from the previous school in which the child was enrolled[.]"   N.B. claims that no evidence was presented that the Board made any attempt to obtain N.B.'s records from the Jefferson County School District.   As to this issue, the hearing officer stated:

> The Petitioner at hearing raised the issue of when the District received all of the records of the child from Jefferson County.   Such an issue was not raised in the Petitioner's due process complaint and the issue sounds more akin to a FERPA issue than an IDEA.   But in any event, M.M. testified that there was nothing in the full set of records that would have changed her opinions provided in this matter as to the appropriateness of N.B.'s IEP and evaluation.

(Doc. 20-8 at 46 n.3).

"Not every procedural defect results in a violation of the IDEA.   Rather, '[i]n evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect *per se*.' " G.J. v. Muscogee County Sch. Dist., 668 F.3d 1258, 1270 (11th Cir. 2012) (quoting Weiss by Weiss v. School Bd. of Hillsborough Cnty., 141 F.3d 990, 994 (11th Cir. 1998) (adopting order of district court)).   In considering the impact of the defect, the Court looks to whether it thwarted the purpose of the procedural requirement and whether it resulted in harm to the child.   See Weiss, 141 F.3d at 996.   "[T]o successfully seek compensation flowing from a procedural violation of the IDEA, one of the following

two types of harm must be proved: (1) failure to provide educational benefit or (2) restriction of the parents' ability to participate fully in their child's education." Gwinnett Cnty. Sch. Dist. v. J.B. ex rel. D.B., 398 F. Supp. 2d 1245, 1249 (N.D. Ga. 2005) (citing Collier Cnty. Sch. Bd. v. K.C., 285 F.3d 977, 982 (11th Cir. 2002); Weiss, 141 F.3d at 997).   See also DeKalb Cnty. Sch. Dist. v. J.M., No. 1:06-CV-125-TCB, 2008 WL 8429694, at *5 (N.D. Ga. Sept. 3, 2008) aff'd, 329 F. App'x 906 (11th Cir. 2009) ("[T]o succeed on a procedural challenge, W.M. must show that harm flowed from the procedural violations . . . To do this, W.M. must show that the procedural violations resulted in a failure to provide an educational benefit or restricted the ability of the parents to participate fully in their child's education.   Gwinnett County Sch. Dist. v. J.B. ex rel. D.B., 398 F. Supp. 2d 1245, 1249 (N.D. Ga. 2005)."); K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist., No. 1:11-CV-727-TWT, 2012 WL 4403778, at *2 (N.D. Ga. Sept. 21, 2012) (slip copy) ("In order to obtain relief, the Plaintiffs would have to demonstrate that procedural violations resulted in substantive educational harm to K.A. or denied K.A.'s parents the right to meaningfully participate.").

As the hearing officer specifically noted, the testimony of the Board's special education expert indicates that the Board would have found the Jefferson County IEP to be appropriate for N.B. regardless of whether it possessed all of N.B.'s records from the Jefferson County School District.   N.B. has not presented any argument or identified any evidence indicating how this procedural defect negatively impacted him. Therefore, the Court finds this procedural defect to be harmless and that it did not deprive N.B. of a FAPE.

**2.      IEP Meeting in November 2010**

N.B. argues that his guardians did not receive notice of the November 11, 2010

IEP meeting, at which the decision was made to extend the use of the Jefferson County IEP for N.B. to May 26, 2011 (Doc. 20-8 at 33).   Thus, they claim they were not given the opportunity to participate in determining an appropriate IEP for N.B.   L.K. testified to this effect at the due process hearing, stating that had she received notice of the IEP meeting she would have attended.   (Doc. 20-3 at 50, p. 501; Doc. 20-4 at 3, p. 526).

N.B. cites to 290-8-9-.05(5) of the Alabama Administrative Code, which states in relevant part:

> (a) Each public agency must take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded the opportunity to participate, including the provision of a written notification of the IEP meeting early enough to ensure that they will have an opportunity to attend and scheduling the meeting at a mutually agreed upon time and place.
>
> . . .
>
> (d) A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend. In this case, the public agency must keep a record of reasonable efforts (at least two attempts) to arrange a mutually agreed on time and place such as detailed records of telephone calls made or attempted and the results of those calls, copies of correspondence sent to parents and any responses received, and detailed records of visits made to the parent's home or place of employment and the results of those visits.

Similarly, the Code of Federal Regulations states:

(a) Public agency responsibility--general. Each public agency must take steps to ensure that one or both of the parents of a child with a disability are present at each IEP Team meeting or are afforded the opportunity to participate, including—

> (1) Notifying parents of the meeting early enough to ensure that they will have an opportunity to attend; and
>
> (2) Scheduling the meeting at a mutually agreed on time and place.

. . .

(d) Conducting an IEP Team meeting without a parent in attendance. A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend. In this case, the public agency must keep a record of its attempts to arrange a mutually agreed on time and place, such as—

(1) Detailed records of telephone calls made or attempted and the results of those calls;

(2) Copies of correspondence sent to the parents and any responses received; and

(3) Detailed records of visits made to the parent's home or place of employment and the results of those visits.

34 C.F.R. § 300.322 (effective Oct. 13, 2006).

The Board claims that the Board sent two notices of the November 2010 IEP meeting to N.B.'s guardians, citing testimony by Lay that she sent two notices home through N.B.   (Doc. 20-3 at 3, pp. 313-15).   No follow-up by phone was made prior to the IEP meeting being held without N.B.'s guardians.

The hearing officer did not address this argument in his decision.   The Court is dubious that sending notices home with a special needs child, then failing to make even one follow-up telephone call to the guardians when no response to the notices was received, constitutes reasonable efforts to afford N.B.'s guardians the opportunity to participate in the November 2010 IEP meeting.   However, even if the Court were to determine that this was a procedural violation, N.B. has not shown by a preponderance of the evidence that this defect restricted his guardians' "ability to participate fully in their child's education[,]"   Gwinnett Cnty. Sch. Dist., 398 F. Supp. 2d at 1249, or otherwise denied him a FAPE.   While parental involvement in the education of special-needs children is "a goal of the IDEA," it is "not []an absolute requirement[.]" Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313 n.2 (11th Cir.

2003).

L.K. testified at the hearing that she would consult with school staff concerning N.B.'s behavioral issues and strategies for dealing with them, and that the staff members were receptive to her suggestions.   (Doc. 20-4 at 2-3, p. 521-23).   L.K. maintained regular contact with Lay and would speak with her "at least once a week." (Doc. 20-3 at 51, p. 506).   This evidence indicates an active involvement in N.B.'s education by L.K.   N.B. does not claim that the Board did not in fact send notice of the November 2010 IEP meeting, only that his guardians did not receive it.   He has also not shown how his guardians were prejudiced by not attending the meeting – failing to present, for instance, evidence of any concerns or suggestions they would have presented at the meeting, or even whether they would have objected to the IEP implemented at the meeting at all.   Even if N.B.'s guardians had objections to the Jefferson County IEP, however, "IEP team consensus does not require parental agreement in order to satisfy the IDEA."   Rosinsky ex rel. Rosinsky v. Green Bay Area Sch. Dist., 667 F. Supp. 2d 964, 984 (E.D. Wis. 2009) (citing Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist., 507 F.3d 1060, 1065-66 (7th Cir. 2007)).   Moreover, L.K. admitted that, during her visits to the school, she did not question school personnel about any failure to have an IEP in place for N.B.   (Doc. 20-4 at 3, p. 524).   Such a lack of inquiry further weakens N.B.'s argument that his guardians were deprived of a meaningful opportunity to develop his IEP.

The ultimate issue is whether this procedural violation resulted in harm to N.B.'s right to a FAPE.   No evidence has been presented that would support such a finding. Rather, the evidence is that the DCSD addressed N.B.'s behavioral problems on a daily basis with extensive counseling and special treatment of N.B.'s defiance to authority in

an effort to keep N.B. on track.   For these reasons, the Court finds that N.B. has failed to sufficiently show harm arising from his guardians' absence from the November 2010 IEP meeting.

### c.   Sufficiency of the Jefferson County IEP

IDEA requires that an IEP contain "a statement of measurable annual goals, including academic and functional goals, designed to -- (aa) meet the child's needs that result from the child's disability to enable the child to be involved in and make progress in the general education curriculum; and (bb) meet each of the child's other educational needs that result from the child's disability[.]"   § 1414(d)(1)(A)(i)(II).   N.B. argues that the Jefferson County IEP is substantively deficient because the one annual goal that it sets forth is neither measurable nor sufficiently individualized to meet N.B.'s needs. N.B. offers little in the way of evidence to support his conclusory statements, pointing only to N.B.'s disorders and medications (apparently asking the Court to draw its own uninformed conclusions from these medical facts) and the fact that N.B.'s case manager did not think that the IEP was well-written.

However, the hearing officer's "Summary of the Evidence" extensively notes the testimony of the Board's special education expert and several of N.B.'s teachers indicating both that the Jefferson County IEP was appropriate for N.B.'s needs, which are behavioral rather than academic in nature, and that the annual goal was measurable (by office discipline referrals (Doc. 20-8 at 22, 31)).   "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."   Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982).   The Eleventh

Circuit has cautioned that "[c]ourts owe some judicial deference to local administrative agency judgments" in "matters calling upon educational expertise." Loren F., 349 F.3d at 1314 n.5.   N.B. has given the Court no significant reason to disregard either the testimony of these education professionals or the findings of the hearing officer as to the appropriateness of the Jefferson County IEP, and the Court will not substitute its own judgment for theirs.

N.B. also questions the sufficiency of the Jefferson County IEP by arguing that "[t]he Defendant's logic in maintaining" it was "based upon what was contained in the eligibility report[,]" with the most current assessments in the report being "almost 2½ years old at the time N.B. transferred to Defendant's school system" and with some information being older.   (Doc. 26-1 at 17).   The hearing officer did not specifically address this argument.   However, § 1414(a)(2)(B)(ii) states that reevaluations for identifying a child's disabilities and determining his educational needs "shall occur[]at least once every 3 years[.]"   N.B. has provided no specific reasons, nor identified any specific record evidence, indicating why the age of the information in the eligibility report rendered it unusable or inappropriate in the Board's decision to maintain the Jefferson County IEP.

The Court finds that the hearing officer's determinations on the substantive sufficiency of the Jefferson County IEP are supported by the administrative record, and the Court concurs with those determinations.

**V.    Conclusion**

For the reasons stated, the Court affirms the decision of the hearing officer and finds that the Board did not deny N.B. a free appropriate public education at any time relevant to this action.   Therefore, it is **ORDERED** that Defendant Demopolis City

Board of Education's Motion for Summary Judgment (Doc. 19) is **GRANTED** and that this action is **DISMISSED with prejudice**.   Judgment shall issue separately in accordance with this Order.

      **DONE** and **ORDERED** this the **7th** day of **December 2012**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**